## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATHAN M. F. CHARLES, ESQ.;** | |
| **C.S.C.**, a minor; | |
| & | |
| **E.K.C.**, a minor | |
| Plaintiffs | |
| v. | |
| **JUDGE DOUGLAS R. M. NAZARIAN**, in his official capacity as Judge of the Appellate Court of Maryland; | Case No. 8:25-cv-03302-PX |
| **JUDGE STUART R. BERGER**, in his official capacity as Judge of the Appellate Court of Maryland; | JURY TRIAL DEMANDED PURSUANT TO F.R.C.P. 38(b) |
| **JUDGE LAURA S. RIPKEN**, in her official capacity as Judge of the Appellate Court of Maryland; | |
| **JUDGE CHRISTOPHER C. FOGLEMAN**, in his official capacity as Judge of the Circuit Court for Montgomery County, Maryland; | |
| **JUDGE BIBI M. BERRY**, in her official capacity as Judge of the Circuit Court for Montgomery County, Maryland; | |

**JUDGE MARY E. AYRES**, in her official capacity as Judge of the Circuit Court for Montgomery County, Maryland;

**JUDGE CARLOS F. ACOSTA**, in his official capacity as Judge of the Circuit Court for Montgomery County, Maryland;

**JUDGE LOUIS M. LEIBOWITZ**, in his official capacity as Judge of the Circuit Court for Montgomery County, Maryland;

&

**JAMES A. BONIFANT**, Circuit Administrative Judge, 6th Judicial Circuit, and County Administrative Judge, Montgomery County Circuit Court

Defendants

## PLAINTIFFS' OPPOSITION TO DEFENDANTSS' MOTION TO DISMISS AND CROSS-MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT

Plaintiffs respectfully oppose Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In conjunction with, and closely related to, this opposition, Plaintiffs also moves for leave to file a Third Amended Complaint under Rule 15(a), as additional unconstitutional conduct has occurred since the filing of the Second Amended Complaint, further substantiating

Plaintiffs' claims and clarifying the ongoing nature of the constitutional violations at issue.

## I.    <u>INTRODUCTION</u>

1.    Defendants' motion to dismiss rests on a fundamental mischaracterization of this case. Plaintiffs do not seek appellate review of state court judgments. Nor do Plaintiffs seek to relitigate custody determinations. Rather, Plaintiffs brings this action under 42 U.S.C. § 1983 to challenge an ongoing and escalating pattern of constitutional violations—specifically, the imposition and threat of sanctions in retaliation for protected speech and without any identifiable misconduct.

2.    At the core of this case is a simple but dispositive fact: **The Maryland courts have never identified a single improper filing by Plaintiffs. Not one.**

3.    Instead, sanctions have been imposed based on the *volume* of filings, mere disagreement with Plaintiffs' legal arguments, and Plaintiffs' criticism of opposing counsel and the Maryland courts. This is not sanctionable conduct under the Constitution. It is protected advocacy.

4.    The record confirms that sanctions were imposed for alleged "bad faith" litigation conduct without identifying any specific filing that was frivolous,

improper, or sanctionable. This case therefore presents a classic First Amendment retaliation claim and a procedural and substantive due process violation.

5.      Defendants' reliance on *Rooker–Feldman*, *Younger*, Eleventh Amendment immunity, and judicial immunity is misplaced. Those doctrines do not shield ongoing unconstitutional conduct, nor do they bar prospective relief under *Ex parte Young*.

6.      Finally, even if the Court were to find any pleading deficiency, Plaintiffs seeks leave to file a Third Amended Complaint incorporating newly arisen unconstitutional conduct and clarifying the claims. **Among the new allegations are comments made by Administrative Judge Bonifant of the Montgomery County Circuit Court indicating an intent to enter a prefiling order against Plaintiffs based on a refusal to make direct payment to a senior judge for unsolicited mediation services.** Leave must be granted under Rule 15.

## II.    <u>SERVICE OF PROCESS WAS PROPER</u>

7.      Defendants' arguments regarding service of process are both meritless and, in any event, waived. Under Federal Rule of Civil Procedure 12(h)(1), Defendants have waived any objection to service by failing to timely raise it, including by neglecting to oppose Plaintiffs' motion confirming service or to enter a special appearance for that limited purpose. Plaintiffs previously filed a Motion for Order Confirming Proper Service under Federal Rule of Civil Procedure

4(j)(2), and Defendants failed to file any timely opposition to that motion. Defendants likewise declined to enter a special appearance for the limited purpose of contesting service. Having failed to timely raise or preserve any objection, Defendants cannot now relitigate the issue.

8.      Moreover, Defendants' position is substantively frivolous. **Plaintiffs effected service through a professional process server, who executed and filed a sworn affidavit of service establishing prima facie validity.** Defendants offer no competent evidence to rebut that showing. Their continued refusal to acknowledge service—despite sworn proof and actual notice—is not grounded in Rule 4 and reflects an unjustified and dilatory refusal to engage the merits of this action.

## III.   <u>STANDARD OF REVIEW</u>

### A.   <u>Rule 12(b)(1)</u>

9.      On a motion to dismiss for lack of subject matter jurisdiction, the Court must accept Plaintiffs' factual allegations as true unless Defendants presents evidence sufficient to mount a factual challenge.

### B.   <u>Rule 12(b)(6)</u>

10.     To survive a motion to dismiss, a complaint must state a plausible claim for relief. The Court must accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiffs' favor.

IV.    <u>ARGUMENT</u>

A.    <u>**Rooker–Feldman Does Not Apply**</u>

11.    Defendants contends that Plaintiffs are "state court loser[s]" seeking review of state court judgments. That is incorrect.

### 1.    Plaintiffs do not seek appellate review

12.    Plaintiffs do not ask this Court to reverse custody rulings, vacate state court judgments, or review the merits of state court decisions properly within state jurisdiction. Plaintiffs are seeking relief from those errors in the Maryland appellate courts.

13.    Instead, Plaintiffs challenge an **independent constitutional injury**: the ongoing practice of sanctioning protected speech without identifying misconduct.

### 2.    The injury is independent of the judgment

14.    The injury arises not from the existence of a judgment, but from retaliatory sanctions, viewpoint-based punishment, and arbitrary enforcement.

15.    The state court's own orders demonstrate that sanctions were imposed for generalized "bad faith" without identifying specific improper conduct. That is an independent federal injury.

### 3.    Parallel claims are not barred

16.    The mere fact that Plaintiffs' claims arise from the same factual context as prior state court proceedings does not trigger the Rooker–Feldman

doctrine. That doctrine applies only where a Plaintiffs seeks redress for an injury caused by the state court judgment itself. *See Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 718–19 (4th Cir. 2006); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

17.    Where, as here, a Plaintiffs alleges an independent constitutional injury arising from the Defendants' conduct, rather than from the state court judgment, the doctrine does not apply. *Davani*, 434 F.3d at 719; *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 320–21 (4th Cir. 2016). Plaintiffs do not seek review or reversal of any state court decision but instead challenges an ongoing pattern of unconstitutional conduct—namely, the imposition of sanctions in retaliation for protected speech without identification of any improper filing—which falls outside the doctrine's narrow scope.

## B.    Younger Abstention Does Not Bar This Action

18.    Defendants contends that this Court must abstain under *Younger v. Harris*, 401 U.S. 37 (1971). That argument fails for two independent reasons. First, this case does not fall within the narrow categories of proceedings to which Younger applies. Second, even if Younger were implicated, the bad-faith and harassment exception applies.

**1.     *Younger* Is a Narrow Doctrine Limited to Exceptional Categories of Proceedings**

19.     The Supreme Court has made clear that Younger abstention is "the exception, not the rule." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013). It applies only in three "exceptional" categories of cases:

- ongoing state criminal prosecutions;

- certain civil enforcement proceedings akin to criminal prosecutions; and

- civil proceedings involving orders uniquely in furtherance of the state courts' ability to perform their judicial functions.

*Id.* at 73. Outside those narrow categories, federal courts have a "virtually unflagging obligation" to exercise jurisdiction. *Id.* at 77 (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

20.     This case does not fall within any of those categories.

**2.     Domestic Relations Litigation with Speech-Based Sanctions Is Not a Qualifying Younger Category**

21.     This action arises out of ongoing divorce and custody proceedings in Maryland state court. Plaintiffs do not seek federal intervention in the adjudication of marital status, custody determinations, or other core domestic-relations issues. Instead, Plaintiffs challenge an independent pattern of constitutional violations— namely, the imposition of sanctions and threats of filing restrictions based on protected speech.

22.    As alleged in the operative complaint, multiple judges have imposed or threatened sanctions not for any identified litigation misconduct, but because of the "tone, content, and persistence" of Plaintiffs' filings and criticisms of the court and opposing counsel.

23.    Critically: **no court has identified a single improper filing by Plaintiffs.** The proceedings at issue are therefore not ordinary adjudications of domestic-relations matters, nor are they quasi-criminal enforcement actions. Rather, they involve the alleged use of judicial authority to penalize protected expression and deter further petitioning activity.

24.    Nor do these proceedings fall within the third *Sprint* category. While courts have an interest in managing their dockets, the Constitution does not permit that authority to be exercised in a manner that punishes protected speech without identifying any improper conduct. Where sanctions are imposed based on viewpoint or tone, rather than objective litigation misconduct, the proceeding ceases to function as a legitimate exercise of judicial administration. Accordingly, Younger abstention does not apply.

### 3.    Even If Younger Applies, the Bad Faith and Harassment Exception Controls

#### a)    *The General Rule*

25.    Even where Younger would otherwise apply, abstention is not required where the state proceeding is conducted in bad faith or for purposes of

harassment. *Younger*, 401 U.S. at 49; *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975). The Supreme Court has emphasized that this exception is narrow and applies only in extraordinary circumstances. *Kugler*, 421 U.S. at 126–27. It is satisfied where proceedings are undertaken "without a reasonable expectation of obtaining a valid [result]" or are used as a tool of retaliation or harassment. *Id.* at 126 n.6.

26.    The Fourth Circuit has likewise recognized that Younger does not apply where proceedings are initiated or maintained in bad faith or for purposes of harassment, though it has emphasized that such circumstances are rare. *Nivens v. Gilchrist*, 444 F.3d 237, 241, 247 (4th Cir. 2006); *Suggs v. Brannon*, 804 F.2d 274, 278 (4th Cir. 1986).

### b)    This Case Falls Within the Narrow Exception

27.    Although courts rarely apply the bad-faith exception, this case falls squarely within it. This is not a situation where Plaintiffs merely disputes adverse rulings or seeks to short-circuit ongoing litigation. Rather, Plaintiffs alleges that **the state proceedings themselves have been transformed into a mechanism of retaliation against constitutionally protected speech.** Specifically:

- Sanctions have been imposed repeatedly without identification of any improper filing;

- Maryland courts have relied explicitly on Plaintiffs' tone, criticism, and perceived disrespect as the basis for sanctions;

- Escalating financial penalties have been imposed despite the presence of colorable legal claims; and

- The Maryland Circuit Court has threatened sweeping pre-filing restrictions without identifying which filings were allegedly frivolous.

28.    These allegations distinguish this case from the ordinary *Younger* scenario. The issue is not merely that Plaintiffs is subject to ongoing litigation, but that the litigation process itself is being used to penalize protected expression.

29.    The retaliatory and arbitrary nature of the proceedings is further illustrated by the court's treatment of Plaintiffs' parental rights. In January 2024, the state court imposed severe restrictions on Plaintiffs' access to each other—limiting their visitation to one supervised weekend per month—**despite the absence of any credible evidence that Plaintiff Nathan Charles posed a risk to the children and notwithstanding the court-appointed custody evaluator's express finding that both parents were fit.**

30.    Plaintiffs do not ask this Court to review or modify that custody determination. **Rather, this episode provides additional evidence of a broader pattern in which judicial decisions affecting Plaintiffs' fundamental rights have been made without identifiable evidentiary support and in close temporal proximity to Plaintiff Nathan Charles's protected speech and petitioning activity.** This pattern reinforces the conclusion that the proceedings at

issue are not functioning as neutral adjudications, but as a mechanism for punitive and retaliatory action.

31.    Under *Kugler*, bad faith exists where proceedings lack a legitimate basis or are pursued for an improper purpose. 421 U.S. at 126 n.6. Here, the absence of any identified improper filing—combined with sanctions tied explicitly to speech—supports a reasonable inference that the sanctions are not grounded in legitimate adjudicative concerns.

32.    This aligns with the principle recognized in *Dombrowski v. Pfister*, 380 U.S. 479 (1965), where federal intervention was appropriate because state processes were used to chill constitutional rights rather than to enforce valid legal standards.

**4.    The Availability of State Review Does Not Cure the Constitutional Injury**

33.    Defendants may argue that Plaintiffs can raise constitutional objections in the state courts. But that argument fails where the state proceeding itself is the source of the constitutional violation.

34.    As the Supreme Court recognized in *Dombrowski*, requiring a litigant to endure an ongoing, bad-faith proceeding constitutes irreparable injury, even if eventual appellate review is available. 380 U.S. at 485–86.

35.    Here, Plaintiffs alleges that:

- sanctions continue to be imposed for protected speech;

- courts have declined to identify any specific misconduct; and

- the retaliatory pattern has escalated following Plaintiffs' protected petitioning activity.

36.    Under these circumstances, deferring to the state process would not vindicate federal rights—it would prolong the alleged constitutional injury.

### 5.    Conclusion

37.    Younger abstention does not apply for two independent reasons. First, this case does not fall within the narrow categories of proceedings to which Younger applies under *Sprint*. Second, even if it did, Plaintiffs have plausibly alleged extraordinary circumstances demonstrating bad faith and retaliatory use of judicial process. Accordingly, this Court should exercise its jurisdiction and deny Defendants' motion to dismiss on Younger grounds.

### C.    <u>Eleventh Amendment Does Not Bar Claims</u>

38.    Plaintiffs seek prospective relief against ongoing violations of federal law. Under **Ex parte Young**, such claims are not barred by the Eleventh Amendment. The ongoing threat of sanctions and the **denial of Plaintiffs' access to each other**—based on speech—constitutes a continuing violation.

### D.    <u>JUDICIAL IMMUNITY DOES NOT BAR PROSPECTIVE RELIEF</u>

39.    Judicial immunity does not bar claims for prospective declaratory or injunctive relief. Plaintiffs do not seek damages for past rulings. Plaintiffs seek to enjoin ongoing unconstitutional practices, including:

- sanctioning speech without standards,

- punishing advocacy based on viewpoint, and

- Denying a father and his children access to each other based on purely retaliatory motivations.

### E.   **Plaintiffs States a Valid First Amendment Claim**

40.   To state a claim for First Amendment retaliation under 42 U.S.C. § 1983, a Plaintiffs must plausibly allege that: (1) he engaged in protected First Amendment activity; (2) the Defendants took an action that adversely affected that protected activity; and (3) a causal relationship exists between the protected activity and the Defendants' conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020).

### 1.   **Protected activity**

41.   The First Amendment protects not only speech, but also the right to petition the government for redress of grievances, including through litigation and court filings. *See Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). Criticism of government officials, including judges, lies at the core of protected speech. *See id.*; *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

42.   Plaintiffs engaged in litigation advocacy, criticism of opposing counsel, criticism of court rulings. All are protected by the First Amendment.

### 2.    Adverse action

43.    An action is sufficiently adverse if it would "likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500.

44.    Here, Plaintiffs was subjected to:

- monetary sanctions (including over $110,000 in fees);

- additional sanctions in contempt proceedings;

- **denial of access to his children despite an absence of evidence that he posed any risk to his children;**

- ongoing threats of further penalties—including prospective entry of a prefiling order cutting off Plaintiff Nathan Charles's access to the Maryland Courts entirely.

### 3.    Causation

45.    To satisfy causation, a Plaintiffs must allege that the protected activity was a substantial or motivating factor in the Defendants' decision to take adverse action. *Martin*, 977 F.3d at 299; *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

46.    Critically: **No court has ever identified a single improper filing.** Instead, sanctions are tied to Plaintiffs' persistence, volume of filings, and apparent disagreement with his positions (although notably: the Maryland Circuit Court has failed to issue opinions in support of most of its rulings, making the nature of its

actions even less explicable).  This establishes a strong inference of retaliatory motive.

### F.      Plaintiffs States a Valid Due Process Claim

#### 1.      Lack of identifiable misconduct

47.     The Due Process Clause requires that laws and their enforcement provide fair notice of prohibited conduct and establish clear standards to prevent arbitrary and discriminatory application. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (due process requires "fair notice" of what conduct is prohibited); *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972) (laws must provide explicit standards to avoid arbitrary and discriminatory enforcement); *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983) (due process is violated where a law "encourages arbitrary and erratic arrests and convictions"). *See also United States v. Sun*, 278 F.3d 302, 309 (4th Cir. 2002) (due process requires sufficient definiteness to avoid arbitrary enforcement).

48.     Applying these principles, Plaintiffs has plausibly alleged a paradigmatic violation of procedural due process. The Second Amended Complaint details that sanctions were repeatedly imposed without identifying any specific filing that was frivolous, improper, or undertaken in bad faith, and instead were expressly based on subjective factors such as Plaintiff Nathan Charles's "tone," criticism of the court, and persistence in litigation. This lack of specificity

deprived Plaintiffs of fair notice as to what conduct was prohibited, while the reliance on amorphous and viewpoint-dependent criteria such as "disrespect" or "derogatory remarks" reflects the absence of clear, objective standards governing enforcement.

49. At the same time, the allegations demonstrate arbitrary application: Plaintiffs alone was subjected to substantial monetary sanctions, threats of sweeping filing restrictions, **and even the loss of access to his children**—even as opposing counsel allegedly engaged in materially deceptive conduct without consequence.

50. Taken together, these facts support a reasonable inference that sanctions were imposed not pursuant to defined legal standards, but through standardless discretion untethered to identifiable misconduct—precisely the type of arbitrary enforcement that the Due Process Clause forbids.

51. The same constitutional defects are even more pronounced in connection with the threatened pre-filing injunction. Courts have made clear that such restrictions on access to the courts are an "extreme remedy" that may be imposed only with strict procedural safeguards, including notice, a developed record, substantive findings identifying specific frivolous filings, and narrow tailoring to the misconduct at issue. *See Cromer v. Kraft Foods N. Am., Inc.*, 390

F.3d 812, 817–19 (4th Cir. 2004); *De Long v. Hennessey*, 912 F.2d 1144, 1147–49 (9th Cir. 1990).

52.     The allegations here describe the opposite: **a sweeping show-cause order demanding that Plaintiffs defend approximately ninety filings without identifying which, if any, were allegedly frivolous, and without articulating any governing standard by which such filings would be judged.** Absent specific findings of misconduct and clear criteria guiding enforcement, such a pre-filing restriction operates as a prior restraint on the right to petition and an arbitrary deprivation of access to the courts. Under *Cromer* and *De Long*, these deficiencies are not merely procedural irregularities—they render the contemplated injunction constitutionally infirm.

### G.     Plaintiffs States a Claim Based on Retaliatory Sanctions

53.     The record reflects a fundamental disconnect between the legal standard governing sanctions and the manner in which those sanctions were actually imposed. Courts repeatedly characterized Plaintiffs' arguments as made in "bad faith," yet neither the trial court nor the appellate court identified any specific filing, motion, or discrete litigation act that was frivolous, abusive, or undertaken without substantial justification. Even more striking, the state courts expressly acknowledged that at least some of Plaintiffs' arguments possessed arguable merit and were not inherently sanctionable. Despite this acknowledgment, sanctions

were imposed wholesale, without apportionment and without tethering the award to any identifiable improper conduct.

54.    This failure is not a mere procedural irregularity—it goes to the constitutional core of the sanctioning power. Both federal and Maryland law require that sanctions be grounded in specific, identified misconduct, not generalized disapproval of a litigant's tone, persistence, or viewpoint. Where a court imposes penalties without isolating the allegedly improper act, it deprives the litigant of fair notice, prevents any meaningful opportunity to defend against the charge, and vests the court with effectively standardless discretion. Here, the allegations show that sanctions were imposed not as a response to discrete litigation abuse, but as a reaction to Plaintiffs' speech—Nathan Charles's criticisms of opposing counsel, his objections to judicial rulings, and his refusal to abandon colorable claims.

55.    That disconnect—between a legal regime that requires narrowly defined misconduct and a record devoid of any such findings—is precisely what the Due Process Clause forbids. It transforms the sanctioning power from a tool for policing abuse of process into an instrument of arbitrary enforcement and viewpoint-based punishment.

### H.    Leave To Amend Must Be Granted

56.    Plaintiffs respectfully moves for leave to file a Third Amended Complaint. Defendants argues amendment would be futile. That is incorrect.

#### 1.    Rule 15 standard

57.    Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely give[n] when justice so requires," and the Supreme Court has made clear that this mandate is to be heeded absent limited circumstances such as undue delay, bad faith, prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fourth Circuit has repeatedly emphasized this liberal standard, explaining that Rule 15 reflects a strong policy in favor of resolving cases on their merits rather than on technical pleading deficiencies. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006); *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013). Accordingly, leave to amend should be denied only where the proposed amendment would be prejudicial, made in bad faith, or futile. *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). This liberal standard applies with particular force where, as here, the Plaintiffs seeks to add allegations concerning ongoing constitutional violations that occurred after the prior pleading was filed.

#### 2.    New facts

58.    Plaintiffs seeks to include additional instances of unconstitutional conduct, continued sanctions, and escalating retaliation by the Montgomery

County Circuit Court. Of particular concern is the Montgomery County Circuit Court's explicit threat to enter a prefiling order and Judge Bonifant's statements from the bench indicating that the prefiling order **might be predicated on Plaintiffs' failure to make direct payments to a senior judge for mediation services**. Of less immediate concern—but no less bewildering—the court-appointed custody evaluator has even leveraged the Office of the Attorney General of Maryland to file Motion for a protective order relieving her from the duty to testify in the case. Under the circumstances, there is no basis to deny leave.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully requests that the Court:

    A. DENY Defendants' Motion to Dismiss;

    B. Find that service was properly effected;

    C. GRANT Plaintiffs leave to file a Third Amended Complaint; and

    D. Grant such other relief as the Court deems just and proper.



April 8, 2026
Date:

NATHAN M. F. CHARLES, Esq.
Managing Partner,
Charles International Law.
www.charlesinternationallaw.com
*Pro Se*
EOIR ID: EE182662
Pennsylvania Attorney 315497
606 Baltimore Ave., Unit 207, #556
Baltimore, MD 21204
(o) 240-406-4977
(m) 717-202-9407
nate@charlesinternationallaw.com